FILED
United States Court of Appeals
Tenth Circuit

March 30, 2021

Christopher M. Wolpert
Clerk of Court

**UNITED STATES COURT OF APPEALS**

**TENTH CIRCUIT**

TREVA BACY,

      Plaintiff - Appellant,

v.

CHICKASAW NATION
INDUSTRIES, INC., an Oklahoma
corporation; CNI FEDERAL
SERVICES LLC, an Oklahoma limited
liability company,

      Defendants - Appellees.

No. 20-6087
(D.C. No. 5:19-CV-00512-G)
(W.D. Okla.)

**ORDER AND JUDGMENT**[*]

Before **PHILLIPS**, **MURPHY**, and **McHUGH**, Circuit Judges.

## I. Introduction

Plaintiff-Appellant Treva Bacy, an African American woman, appeals from

the district court's order granting summary judgment in favor of Defendants

Chickasaw Nation Industries, Inc. and CNI Federal Services LLC (collectively

---

[*]This order and judgment is not binding precedent except under the
doctrines of law of the case, res judicata, and collateral estoppel.  It may be cited,
however, for its persuasive value consistent with Fed. R. App. P. 32.1 and 10th
Cir. R. 32.1.

"CNI") on her claims of racial discrimination under Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e-2(a)(1). Exercising jurisdiction under 28 U.S.C. § 1291, we **affirm** the grant of summary judgment.

## II. Background

CNI is a federal contractor that provides aviation-related professional services to the Federal Aviation Administration ("FAA"). During the relevant period, Bacy was employed by CNI as a Remote Pilot Operator Lead at the FAA's Air Traffic Control Academy in Oklahoma City. On October 11, 2017, Bacy was involved in a heated dispute with her supervisor, Sandy Laminack, in Laminack's office. Another supervisor, Sean Wise, was on the phone with Laminack and overhead the conversation. Although Bacy disputes Wise's assessment that she was yelling at Laminack, she does not dispute Laminack asked her to turn in her badge but she refused and walked out of Laminack's office. Later that afternoon, Bacy was suspended by Nathan Jones and Conrad Ennis pending an investigation.

The investigation was conducted by Wendy Hutton from CNI's human resources department. Hutton's investigation included a telephone discussion with Bacy and interviews with Sean Wise, Conrad Ennis, and Laminack. Based on her investigation, Hutton concluded Bacy had yelled at Laminack and directly disobeyed Laminack's instruction to hand in her badge and headset. Hutton forwarded her report to CNI Project Manager, Ryan Groce, and advised him she

-2-

believed Bacy had acted in an insubordinate manner toward Laminack. On October 13, 2017, Groce penned a letter to Bacy advising her she had been terminated for "unprofessional and insubordinate" behavior.

Bacy initiated the instant lawsuit against CNI in November 2018, raising, *inter alia*, claims of race discrimination in violation of Title VII of the Civil Rights Act of 1964 ("Title VII"), 42 U.S.C. §§ 2000e et seq.[1] CNI sought summary judgment on these claims and its motion was granted by the district court.

---

[1]Bacy's complaint also raised a claim of intentional infliction of emotional distress against Sandy Laminack; a race-discrimination claim under the Oklahoma Anti-Discrimination Act ("OADA"), Okla. Stat. Ann. tit. 25, §§ 1101 et seq.; an age-discrimination claim under the Age Discrimination in Employment Act ("ADEA"), 29 U.S.C. §§ 621 et seq.; and a state negligence claim. The claim against Laminack was voluntarily dismissed on September 29, 2019. The district court granted summary judgment to CNI on the OADA and ADEA claims, and declined to exercise jurisdiction over the state negligence claims. Bacy has not appealed from the district court's disposition of any claims except the Title VII race discrimination claims and, thus, we address only those claims. Further, to the extent Bacy contends for the first time in her reply brief that she adequately raised a Title VII retaliation claim against CNI in her complaint, the record conclusively belies that assertion. Bacy's complaint alleges retaliation in violation of Oklahoma law and contains other allegations of retaliation related to her negligence claims against CNI and Laminack. But the complaint does not clearly allege a Title VII retaliation claim.

## III.  Discussion

We review the district court's grant of summary judgment de novo, applying the standard set out in Rule 56(a) of the Federal Rules of Civil Procedure.  *Doe v. Univ. of Denver*, 952 F.3d 1182, 1189 (10th Cir. 2020).  Under the applicable standard, a "court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(a).  "[W]e examine the record and all reasonable inferences that might be drawn from it in the light most favorable to the nonmoving party."  *Fields v. City of Tulsa*, 753 F.3d 1000, 1009 (10th Cir. 2014) (quotation omitted).

Bacy raised two federal race-discrimination claims: a hostile work environment claim and a disparate treatment claim.  Bacy's hostile work environment claim is based on an allegation of a single racist remark made by Laminack in 2017 while discussing an incident in which an African American motorist was killed by a white police officer during a traffic stop.  Bacy testified Laminack stated, "If the police ask me to throw my hands up, I would throw my hands up, because I'm not a drug dealer or a gang banger."  Proving a hostile work environment, however, requires more evidence than Bacy has produced.  "A plaintiff does not make a sufficient showing of a pervasively hostile work environment by demonstrating a few isolated incidents of sporadic slurs.  Instead,

there must be a steady barrage of opprobrious comments." *Morris v. City of Colorado Springs*, 666 F.3d 654, 666 (10th Cir. 2012) (quotation and alterations omitted). Even accepting Bacy's testimony as true, evidence of a single incident is insufficient for a jury to find she was subject to a hostile work environment. Because Bacy has not demonstrated a workplace sufficiently "permeated with [racially] discriminatory intimidation, ridicule, and insult," we affirm the district court's grant of summary judgment to CNI on her hostile work environment claim. *Id*. at 664 (quotation omitted).

Bacy also claimed CNI wrongfully terminated her in violation of Title VII's prohibition on race-based employment decisions. 42 U.S.C. § 2000e-2(a)(1) (prohibiting an employer from "discharg[ing] any individual . . . because of such individual's race"). "To survive summary judgment on a Title VII claim of [racial] discrimination," a plaintiff must "present either direct evidence of discrimination or indirect evidence that satisfies the burden-shifting framework of *McDonnell Douglas*." *Bekkem v. Wilkie*, 915 F.3d 1258, 1267 (10th Cir. 2019). Because Bacy has not pointed to any direct evidence of race discrimination,[2] her

_____

[2]Although Bacy asserts she presented direct evidence of racial discrimination, she does not identify that evidence. She points only to uncontested facts showing she had a long employment history free of any adverse employment actions. This is not direct evidence of racial discrimination. *See Hall v. U.S. Dep't of Labor*, 476 F.3d 847, 855 (10th Cir. 2007) ("Direct evidence is evidence, which if believed, proves the existence of a fact in issue without

(continued...)

claim is properly evaluated under the *McDonnell Douglas* framework. *See McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802–04 (1973). To survive a motion for summary judgment under this framework, a plaintiff must first present a prima facie case of discrimination. If she does so, the burden shifts to the defendant to show a legitimate, nondiscriminatory reason for the adverse employment action. The burden then shifts back to the plaintiff to demonstrate the defendant's proffered reason is pretextual. *Antonio v. Sygma Network, Inc.*, 458 F.3d 1177, 1181 (10th Cir. 2006). For the purposes of its Motion for Summary Judgment, CNI did not contest that Bacy met her initial prima facie burden. CNI met its burden of production by presenting evidence Bacy was terminated for unprofessional behavior and insubordination based on Wendy Hutton's investigation into the October 11, 2019, incident between Bacy and Laminack. Thus, the only remaining question is whether Bacy has met her burden of demonstrating CNI's proffered explanation is pretextual.

Pretext is shown when the employer's reasons for the adverse employment action are so implausible, contradictory, or insubstantial that a trier of fact could find them unworthy of belief. *Pinkerton v. Colo. Dep't of Transp.*, 563 F.3d 1052, 1065 (10th Cir. 2009). Bacy argues summary judgment on her disparate

---

[2](...continued)
inference or presumption." (quotation omitted)).

treatment claim was inappropriate because she raised a genuine issue of material fact as to whether she was actually insubordinate. She asserts CNI's explanation for her discharge is "unworthy of belief" because she alleged in an affidavit that she has never raised her voice at Laminack and never committed any act of insubordination. Even if Bacy's statements are true, they do not create a genuine issue of material fact or support Bacy's burden of showing pretext. In evaluating pretext, "the relevant inquiry is not whether [the employer's] proffered reasons were wise, fair, or correct, but whether [the employer] honestly believed those reasons and acted in good faith upon those beliefs." *Stover v. Martinez*, 382 F.3d 1064, 1076 (10th Cir. 2004) (quotation omitted). This court's role "is not to second guess an employer's business judgment." *Id*. Bacy's pretext argument fails because she has not presented any evidence showing CNI did not honestly believe she was insubordinate. The uncontroverted facts show that Hutton investigated the Laminack incident by interviewing three supervisors with knowledge of the incident. She then presented her conclusions to Ryan Groce. The record further shows Groce made the decision to terminate Bacy based on Hutton's report. Although Bacy disagrees with Hutton's conclusions, she has not presented any evidence showing either Hutton or Groce did not honestly believe she behaved in an unprofessional and insubordinate manner.

Lacking any evidence that Groce or Hutton did not honestly believe she was insubordinate, Bacy seemingly turns to the "subordinate bias" theory, arguing the decision to discharge her was orchestrated by Laminack, who is racially biased. *See EEOC v. BCI Coca–Cola Bottling Co.*, 450 F.3d 476, 484 (10th Cir. 2006) (describing this theory as involving "a situation in which a biased subordinate, who lacks decisionmaking power, uses the formal decisionmaker as a dupe in a deliberate scheme to trigger a discriminatory employment action"). An employer, however, can avoid liability under this theory "by conducting an independent investigation of the allegations against an employee." *Id*. at 488. Bacy's unsupported assertions that CNI terminated her "without any investigation as to the real facts and circumstances" and "did not conduct any reasonable inquiry" into the incident that precipitated her discharge is flatly contradicted by the record. The uncontested evidence demonstrates Hutton investigated the confrontation between Bacy and Laminack by speaking directly to Bacy and three CNI supervisors who had knowledge of the incident.[3] There is also

[3]For the first time in her reply brief, Bacy appears to claim Hutton's investigation was insufficient and not impartial. She does not, however, identify the additional information that would have been uncovered by a more complete investigation or indicate how that information would have undermined Hutton's conclusions. To the contrary, Bacy testified in her deposition she had no evidence, other than her own testimony, to support her belief that Sean Wise and Conrad Ennis lied in the statements they provided to Hutton during her investigation. Further, to the extent Bacy argues the district court prohibited her
(continued...)

uncontroverted evidence Groce relied on Hutton's report when he determined Bacy should be terminated. Accordingly, Bacy cannot rely on the subordinate bias theory to show pretext.

Bacy's title VII race-discrimination claim fails at the third step of the *McDonnell Douglas* framework because she has not come forward with any evidence indicating CNI's proffered reason for her termination is not the true reason. *McCowan v. All Star Maint., Inc.*, 273 F.3d 917, 922 (10th Cir. 2001).

## IV. Conclusion

The judgment of the district court is **affirmed**.

ENTERED FOR THE COURT

Michael R. Murphy
Circuit Judge

---

[3](...continued)
from introducing evidence that Hutton's investigation was incomplete and biased, she likewise fails to support that assertion with any reference to the record.